IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DAVID EDWARD GAUDETTE, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | **1:23-CV-00769-DII** |
| | § | |
| ANGEL HEART HOSPICE, LLC d/b/a | § | |
| NEW CENTURY HOSPICE, INC., | § | |
| *Defendant* | § | |

ORDER AND REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE UNITED STATES DISTRICT COURT**

Before the Court are Defendant's Motion for Judgment on the Pleadings and Supporting Brief, filed February 19, 2024 (Dkt. 13); Defendant's Motion to Stay Discovery, filed February 26, 2024 (Dkt. 16); Defendant's Moton to Exclude Plaintiff's Human Resources Expert and Her Report, filed February 26, 2024 (Dkt. 17); and the associated response and reply briefs. By Text Orders issued March 7, 2024, the District Court referred the motions to this Magistrate Judge for a report and recommendation or disposition, respectively, pursuant to 8 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas.

## I.   Background

Plaintiff David Edward Gaudette, a resident of Lavaca County, Texas, brings this employment discrimination suit under Title VII of the Civil Rights Act of 1964 against his former employer, Angel Heart Hospice, LLC d/b/a New Century Hospice, Inc., a hospice care provider. Complaint (Dkt. 1) ¶ 7.

Gaudette, who is gay, worked as a Hospice Registered Nurse for New Century in the Austin area from 2017 to 2021. *Id.* ¶ 7. He alleges that he "had worked with the understanding that he

was part of a mutually respectful and professional relationship with his patients, co-workers, management, and administration." *Id.* ¶ 9. Gaudette alleges that "all that changed when he learned that he was the subject of ridicule and derisive comments and laughter during a staff meeting on September 15, 2021 regarding being negatively and disrespectfully perceived as outside the norm of expectation for heterosexual males." *Id.* ¶ 10. He alleges that two of his co-workers, Faith Tyner and Dawn Porter, made "disrespectful comments" about him that "essentially stripped Gaudette of his gender by suggesting in overly affected tones that Gaudette would not be mistaken for a male Hospice RN." *Id.* ¶ 11. Several other co-workers at the meeting "engaged in derisive and disrespectful enjoyment and laughter" in response to Tyner and Porter's comments, Gaudette alleges. *Id.* ¶ 13. Although not present at the meeting, he alleges that a co-worker subsequently "informed Gaudette what had occurred." Dkt. 18 at 3. Gaudette alleges that his supervisor, Jon Godby, was present at the meeting but "took no action to protect Gaudette from the unwarranted and illegal ridicule or even, at a minimum, communicate that such disrespectful and discriminatory comments and conduct are unacceptable and would not be tolerated in NCH's workplace." Dkt. 1 ¶ 14. Godby's failure to act or speak out against the comments and laughter, he alleges, "established that [New Century] publicly adopted those disrespectful and discriminatory comments and laugher as acceptable in [New Century's] workplace." *Id.* ¶ 15.

Gaudette contends that the disrespectful comments, his co-workers' laughter, and his supervisor's failure to speak out "established a discriminatorily hostile work environment," and that New Century "chose to deny that the discriminatory comments and laughter had occurred." *Id.* ¶¶ 16- 17. Gaudette alleges that he "quit in constructive discharge of his employment the next Monday following the meeting" because he could not continue working for an employer that

would "fail or refuse to protect him from discrimination and illegal derision in the workplace," "deny that the discriminatory comments and conduct occurred," and "force sensitivity training on the employees . . . because Gaudette needs or demands it, thus further ostracizing Gaudette from his co-workers and employer." *Id.* ¶ 18. He alleges that after he told New Century he was quitting because it failed to protect him from discrimination, New Century threatened to report him to the Texas Board of Nursing for a Health Insurance Portability and Accountability Act of 1996 ("HIPAA") violation to try to dissuade him from pursuing discrimination claims. *Id.* ¶ 20.

Gaudette filed his charge of discrimination with the EEOC on January 5, 2022. Dkt. 1 at 10. After receiving his right to sue letter, Gaudette filed this suit, alleging that he was the victim of a hostile work environment and was constructively discharged and retaliated against for speaking out against the discrimination in violation of Title VII.

In its Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c), New Century argues that Gaudette fails to plead a viable claim under Title VII. New Century also moves to stay discovery pending resolution of the Motion for Judgment on the Pleadings. Dkt. 16. Finally, New Century moves to exclude Gaudette's human resources expert, Coneisha Sherrod. Dkt. 17. Gaudette opposes all three motions.

## II.    Motion for Judgment on the Pleadings

### A.  Legal Standards

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002).

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. A complaint "does not need detailed factual allegations," but the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court accepts the "well-pleaded facts as true," and views "them in the light most favorable to the plaintiff." *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins.,* 22 F.4th 450, 454 (5th Cir. 2022). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Great Plains Trust*, 313 F.3d at 312.

In determining whether a claim survives a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019). But "[w]hen a defendant attaches documents to its motion that are referred to in the complaint and are central to the plaintiff's claims, the court may also properly consider those documents." *Id.*

4

In *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002), the Supreme Court held that an employment discrimination complaint need not contain specific facts establishing a prima facie case of discrimination under the framework set forth in *McDonnell Douglas*[1] and instead must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." (quoting FED. R. CIV. P. 8(a)(2)). Accordingly, a plaintiff need not make out a prima facie case of discrimination under *McDonnell Douglas* to survive a Rule 12(b)(6) motion to dismiss. *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019). "A district court therefore errs by requiring a showing of each prong of the prima facie test for disparate treatment at the pleading stage." *Id.* But the Fifth Circuit also has explained that "although plaintiffs do not 'have to submit evidence to establish a prima facie case of discrimination at this stage, [they must] plead sufficient facts on all of the *ultimate elements* of a disparate treatment claim to make [their] case plausible." *Id.* (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)). There are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: "(1) an 'adverse employment action,' (2) taken against a plaintiff '*because of* her protected status.'" *Id.* (quoting *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013)).

Gaudette's Complaint asserts three claims under Title VII against New Century: hostile work environment, constructive discharge, and retaliation. New Century argues that even assuming all Gaudette's allegations are true, and that he could prove all those allegations at trial, he fails to state a viable claim under Title VII. The Court agrees.

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff must first make a prima facie showing of discrimination. *Id.* at 802. If an employee makes a prima facie case, the burden of production shifts to the employer to offer an alternative nondiscriminatory explanation for the adverse employment action, at which point the employee must show that this explanation is pretextual. *Id.*

### B. Analysis

#### 1. Hostile Work Environment

Under Title VII, it is unlawful to discriminate against an employee on the basis of sex. 42 U.S.C. § 2000e-2(a). Sex discrimination consisting of same-sex sexual harassment also is actionable under Title VII. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998). "A plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). The "standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale*, 523 U.S. at 80).

> Allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation. Rather, there must be "discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment."

*Bye v. MGM Resorts Int'l, Inc.*, 49 F.4th 918, 923 (5th Cir. 2022), *cert. dismissed*, 143 S. Ct. 1102 (2023) (citations omitted).

An employee who brings a hostile work environment claim must show that (1) he belongs to a protected class; (2) he experienced harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1003 (5th Cir. 2022). "To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." *Id.* The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or

abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Id.* at 788 (cleaned up).

The totality of the employment circumstances determines whether an environment is objectively hostile. *Wantou v. Wal-Mart Stores Tex., LLC*, 23 F.4th 422, 433 (5th Cir. 2022), *cert. denied*, 143 S. Ct. 745 (2023). Although no single factor is determinative, courts consider: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." *Id.* The legal standard for workplace harassment in this circuit is "high." *Gowesky v. Singing River Hosp. Sys.*, 321 F.3d 503, 509 (5th Cir. 2003).

Gaudette alleges that Tyner's and Porter's "disrespectful comments" during a staff meeting on September 15, 2021 suggesting "that Gaudette would not be mistaken for a male Hospice RN," other co-workers' "disrespectful enjoyment and laughter" in response to those comments, and Godby's failure to speak out or act against those comments and laughter "established a discriminatory hostile work environment for Gaudette." Dkt. 1 ¶¶ 11, 13, 16.

These facts do not rise to level of a hostile work environment. "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor*, 477 U.S. at 65-67). Gaudette's allegations are not "of a character or kind of conduct" that rises to the level of actionable harassment.

7

First, Gaudette has not shown that the alleged harassment he experienced was "pervasive." *Wantou*, 23 F.4th at 433. He alleges one instance when offensive comments were made during a staff meeting during his four-year employment.[2] An "isolated" incident cannot qualify as pervasive or frequent harassment. *Faragher,* 524 U.S. at 788.[3]

The comments also cannot be considered "severe." "Isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Saketkoo*, 31 F.4th at 1003 (quoting *Faragher*, 524 U.S. at 788). The Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Cases in which a single comment was found to be severe or pervasive enough to support a hostile work environment claim are exceedingly rare. While Gaudette was offended by Tyner and Porter's comments, their isolated comments are not the type of "extreme" conduct that the Fifth Circuit has found to constitute a hostile work environment.[4] Rather, Tyner and Porter's

---

[2] In his Response, Gaudette also points to New Century's alleged retaliatory threat to report him for a HIPAA violation in support of his hostile work environment and constructive discharge claims. But at the Rule 12(b)(6) and Rule 12(c) stage, the Court is limited to the sufficiency of the facts alleged in the complaint and the attached EEOC charge. In addition, the HIPAA violation threat is irrelevant to Gaudette's constructive discharge claim because it occurred after he quit.

[3] *Compare Price v. Valvoline, LLC*, 88 F.4th 1062, 1067 (5th Cir. 2023) (two incidents of harassment did not qualify as frequent) and *West v. City of Houston, Tex.*, 960 F.3d 736, 742 (5th Cir. 2020) (plaintiff failed to show harassment was frequent or pervasive where conduct was isolated or infrequent and occurred "once," "twice," or "occasionally") *with Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 439, 443 (5th Cir. 2011) (plaintiff alleged sufficient facts where he "endured a pattern of name-calling of a half-dozen times daily" which interfered with his pecuniary interests and his supervisor repeatedly used physical intimidation and/or violence against him ), *Lauderdale v. Tex. Dept. of Crim. Just.*, 512 F.3d 157, 164 (5th Cir. 2007) (harassment pervasive where plaintiff received unwanted phone calls "ten to fifteen times a night for almost four months"), and *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (harassing conduct was pervasive when it occurred "two or three times a week").

[4] *Compare Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (supervisor calling employee  a "Lazy Monkey A__ N___" in front of his fellow employees states an actionable claim of hostile work environment), *Cherry v. Shaw Coastal, Inc.*, 668 F.3d 182, 185 (5th Cir. 2012) (evidence was sufficient to support jury's verdict that harassment was severe enough to constitute a hostile work environment where male supervisor's harassment of male employee included numerous sexually explicit text messages and

comments were merely "offensive utterances," which cannot establish a claim under Title VII. *See Harris*, 510 U.S. at 21 (holding that the "mere utterance of an epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment") (cleaned up); *Stewart*, 586 F.3d at 330 (finding that an objectively reasonable person would not find supervisor's statements that they should be "sweet" to each other and stating that he loved her six times during a one-month period to be offensive enough to interfere with plaintiff's work performance or her destroy her opportunity to succeed in workplace); *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996) ("Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a [plaintiff's] opportunity to succeed in the workplace.").

Gaudette was not present at the September 15, 2021 staff meeting when the comments allegedly were made. The Fifth Circuit has considered whether the plaintiff was present when the offensive comments were made when determining whether the comments rise to the level of a hostile work environment. *See Saketkoo*, 31 F.4th at 1004 ("[T]he fact that other women at the School may have experienced severe or pervasive treatment does not save [plaintiff's] claim."); *Septimus v. Univ. of Houston*, 399 F.3d 601, 612 (5th Cir. 2005) ("boorish and offensive" conduct toward female co-workers was irrelevant to whether plaintiff's working environment was objectively hostile or abusive because she "did not personally experience" most of it).

---

repeatedly touching plaintiff and putting his hand on plaintiff's "butt"), *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 483 (5th Cir. 2002) (plaintiff presented sufficient evidence of a hostile environment to survive summary judgment where evidence showed male co-worker fondled male plaintiff's anus as he was bending over and described the contact as similar to "foreplay with a woman")*, and *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (supervisor's "egregious" comments to plaintiff about her sexual activity in front of co-workers which occurred "two or three times a week" was severe enough to constitute a hostile work environment) *with Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 330 (5th Cir. 2009) (supervisor's statements to plaintiff that he loved her that occurred six times over the course of a month did not create a hostile work environment) and *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (a supervisor's offensive joke concerning condoms in plaintiff's presence was insufficient to create an hostile work environment).

The Court also finds that the comments, the resulting laughter, and Godby's alleged refusal to speak out against them collectively do not rise to the level of extreme conduct constituting a hostile working environment.[5] These actions do not describe a workplace that is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (cleaned up). Gaudette has not stated a plausible hostile work environment claim.

### 2.  Constructive Discharge

"Constructive discharge requires a greater degree of harassment than that required by a hostile environment claim." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). Discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge. *Id.* A plaintiff alleging constructive discharge must show "working conditions so intolerable that a reasonable person would have felt compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). To determine whether working conditions are "sufficiently intolerable," courts consider whether the plaintiff suffered:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Newbury v. City of Windcrest, Tex.,* 991 F.3d 672, 677 (5th Cir. 2021).

---

[5] *See Grant v. Harris Cnty.*, 794 F. App'x 352, 360-61 (5th Cir. 2019) (assigning employee to work on a different floor, criticizing his work-ethic in an investigation report, denying him access to control booth, threatening to fire him if he did not sign a personnel document, and waiting to relieve him where he nearly defecated on his clothing was not "sufficiently severe or pervasive to create a hostile work environment"); *Credeur v. La. Off. of Att'y Gen.*, 860 F.3d 785, 796 (5th Cir. 2017) (criticism of employee's work performance, threats of termination, asking her to sign false payroll documents and forcing her to take leave without pay did not constitute a hostile work environment); *Evans-Rhodes v. Nw. Diagnostic Clinic, P.A.*, No. 4:13-CV-01626, 2013 WL 5603003, at *1 (S.D. Tex. Oct. 11, 2013) (co-worker's racially derogatory comment and supervisor's failure to react to plaintiff's complaint about the comment did not create a hostile work environment).

Gaudette argues that he was forced to quit on September 20, 2021 – five days after the allegedly discriminatory comments were made by his co-workers – because (1) of the comments during the September 15, 2021 meeting and resulting laughter; (2) his supervisor failed to speak out or take action when the comments were made and thus failed to protect him from the discrimination; (3) New Century later denied that the allegedly discriminatory comments were made; and (4) New Century required employees to attend sensitivity training "because Gaudette needs or demands it, thus further ostracizing Gaudette from his co-workers and employer." Dkt. 1 ¶¶ 17-18. These allegations, without more, are insufficient for a finding that a reasonable employee in Gaudette's position would have felt compelled to resign.

Gaudette did not receive a demotion, pay cut, or change in job responsibilities. *Newbury*, 991 F.3d at 677. He does not allege that his work was demeaning or degrading. *Id.* In essence, Gaudette argues that he was compelled to resign because he was experiencing a hostile work environment and was dissatisfied with his supervisor's handling of the situation. But as stated, constructive discharge requires greater harassment than that required by a hostile environment claim. *Brown*, 237 F.3d at 566. Gaudette does not specify how his alleged harassment satisfies the higher standard for constructive discharge compared to that of a hostile work environment claim. *See Newbury*, 991 F.3d at 677 (holding that plaintiff's constructive-discharge claim fell short where she did not receive a demotion, pay cut, or shift in her responsibilities and alleged only that the alleged harassment was "calculated to encourage her resignation"). "In this case, the alleged harassment, on its own, was not so egregious as to compel a reasonable employee to resign." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 480 (5th Cir. 2008) (transferring employee to infant department, requiring employee to break down clothing racks on hot day, undesirable break schedule, looking at employee angrily, and making employee wait outside

11

manager's office for a long time did not amount to constructive discharge); *see also Lindsley v. TRT Holdings, Inc.*, 984 F.3d 460, 471 (5th Cir. 2021) (supervisor's threat that if plaintiff took FMLA leave she would be fired and deletion of her computer files could not show that a reasonable employee would have felt compelled to resign); *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430-31 (5th Cir. 1992) ("substantial harassment" involving "continuous and repeated inappropriate verbal comments and physical contact" did not rise to the level necessary to establish a constructive discharge claim); *Howard v. Walmart Inc.*, No. 3:23-CV-0118-L-BH, 2023 WL 8458768, at *4 (N.D. Tex. Sept. 22, 2023) (receipt of unsolicited pornography from supervisor during a two-hour window on one day was not enough to allege a constructive discharge claim), *R. & R. adopted*, 2023 WL 8464949 (N.D. Tex. Dec. 6, 2023).

The Court finds that a reasonable employee would not feel compelled to resign due to New Century's failure to redress the alleged discrimination before Gaudette quit. While Gaudette alleges that he informed New Century "he was quitting his position in protest of [New Century's] failure or refusal to protect him from discrimination," he does not allege that he ever complained about the discrimination *before* he quit on September 20, 2021 – five days after the comments were made and four days after he allegedly learned of them. Dkt. 1 ¶ 20. Gaudette does not dispute that he did not complain about the comments until the day resigned. *See* Dkt. 18 at 4-5; Dkt. 18-1 ¶¶ 18-26. Thus, he gave New Century no real opportunity to redress the alleged discrimination. In the constructive discharge context, "part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." *Aryain*, 534 F.3d at 481 (finding that plaintiff did not act reasonably where she quit 20 days after she was transferred to another department but never complained during that time about her working conditions); *see also Haley v. Alliance Compressor LLC*, 391 F.3d 644, 652 (5th Cir.

12

2004) ("[A] reasonable employee who genuinely felt these working conditions were upsetting to the point of intolerable would have attempted resolution of these concerns before choosing to quit after just over two weeks back on the job.").

The Court also finds that requiring Gaudette's co-workers to attend sensitivity training because he "demanded it," which "ostracized" him from his co-coworkers, would not compel a reasonable employee to resign. Dkt. 1 ¶¶ 17-18. First, it appears that any sensitivity training happened after Gaudette quit. And even if such training occurred before Gaudette quit, ostracism from co-workers does not amount to "badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation." *Haley*, 391 F.3d at 652.

While Gaudette may have subjectively felt that resignation was the only viable option, his working conditions would not compel a reasonable employee to resign. Accordingly, he has failed to allege a viable constructive discharge claim.

### 3. Retaliation

To establish VII retaliation, Gaudette must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal link exists between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021), *cert. denied*, 144 S. Ct. 534 (2023). For Title VII retaliation, an adverse action "need only be one that a reasonable employee would have found 'materially adverse,' meaning 'it might have dissuaded a reasonable worker from making or supporting [protected activity].'" *Johnson v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 90 F.4th 449, 460 (5th Cir. 2024) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees

experience." *Burlington*, 548 U.S. at 68. In *Burlington*, for example, the Supreme Court found

that a 37-day suspension without pay was a "materially adverse" employment action. *Id.* at 73.

Gaudette alleges that New Century retaliated against him on October 5, 2021, two weeks

after he quit, by sending him a letter which he contends "threatened" him "with the potential loss

of his nursing license" for violating HIPAA. Dkt. 1 ¶ 20. The letter states, in full:

> Dear Mr. Gaudette,
>
> This letter is being sent to you on behalf of Gentiva Health
> Services, Inc. and its affiliates, including your former employer
> New Century Hospice (collectively, "New Century"). We
> understand that you are no longer employed by New Century
> effective September 20, 2021. On September 24, 2021, you
> reached out to a facility director to discuss x-ray results for one of
> New Century's patients. **We believe that this may be a HIPAA
> breach and that conversations regarding the care and
> treatment of New Century's patients must stop immediately.**
>
> As a Registered Nurse regulated by the State of Texas, you should
> be well-aware that HIPAA requires you to maintain the absolute
> secrecy of patient information, including medical treatment. You
> must understand that, as a former employee of New Century, even
> following your separation, you also owe New Century a continuing
> legal duty to maintain the confidentiality of its patient information,
> including medical and treatment information regarding its patients
> and their care providers that you obtained while employed by New
> Century.
>
> HIPAA protects the confidentiality of healthcare information.
> HIPAA creates and protects individual privacy rights for protected
> health information and governs the use and disclosure of that
> information. The penalties for HIPAA infractions can be severe.
> We are happy to peacefully coexist, but we cannot and will not
> tolerate HIPAA violations. Please abide by your obligations to
> ensure that additional actions do not become necessary.

Dkt. 13 at 18.[6]

---

[6] New Century attached the letter to its Rule 12(c) Motion. The Court may consider the letter because it
was referred to in the Complaint and is central to Gaudette's retaliation claim. *Walker*, 938 F.3d at 735.

Gaudette construes this letter as a "threat to report Gaudette to the Texas Board of Nursing" for a HIPAA violation that New Century "knew was pretextual" to dissuade him from continuing to pursue claims of gender-based discrimination, hostile work environment, and constructive discharge. Dkt. 1 ¶ 20. Assuming that the letter threatens to report Gaudette for a "false allegation of a HIPAA violation,"[7] Gaudette fails to state a plausible retaliation claim because threats and false accusations do not rise to the level of an adverse employment action.[8] The Court finds that he does not state a plausible Title VII retaliation claim.

Because Gaudette has not alleged a plausible claim under Title VII, this Magistrate Judge recommends that the District Court should grant New Century's Motion to Dismiss.

### III.    Request to Amend

In his Response, Gaudette requests leave to file an amended complaint if the Court finds his pleadings deficient. He attaches a copy of his Proposed Amended Complaint. Dkt. 18-1.

Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2). Courts should deny leave to amend when amendment would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004). Amendment is futile where it

---

[7] Dkt. 18 at 11.

[8] *See Lindsley*, 984 F.3d at 470 (supervisor's threats that if employee took FMLA leave "she would not have a job when she returned" was not an adverse employment action under Title VII because "oral threats or abusive remarks" do not rise to the level of adverse employment actions); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (criticism, abusive remarks and oral threats of termination do not rise to the level of an adverse employment actions in First Amendment retaliation case); *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) ("[M]ere accusations, without more, are not adverse employment actions"); *Lee v. Bexar Cnty.*, No. SA-22-CV-1149-OLG, 2023 WL 3150090, at *3 (W.D. Tex. Mar. 29, 2023) ("Criticism, investigations, or false accusations, however, are not considered adverse employment actions."); *Williams v. City of Austin*, 170 F. Supp. 3d 939, 950 (W.D. Tex. 2016) (city's decision to open investigations into employee's conduct did not constitute "adverse employment actions" for purposes of Title VII retaliation claims), *aff'd*, 683 F. App'x 280 (5th Cir. 2017).

"would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872-73 (5th Cir. 2000).

Gaudette's Proposed Amended Complaint does not cure his pleading deficiencies and similarly fails to state a plausible claim for relief under Title VII. The Court recommends that his request for leave to amend be denied as futile.

## IV.  Motion to Stay

New Century seeks a stay of discovery pending the District Court's ruling on its Rule 12 Motion. New Century argues that it has presented "good cause" under Rule 26(c) because a stay would avoid "undue burden and expense." Dkt. 16 at 1. Gaudette opposes the Motion, arguing that New Century has failed to present good cause for the stay. Good cause exists "when the party from whom discovery is sought shows that it would suffer 'annoyance, embarrassment, oppression or undue burden or expense' absent a stay." *U.S. ex rel. Gonzalez v. Fresenius Med. Care N. Am.*, 571 F. Supp. 2d 766, 767 (W.D. Tex. 2008) (quoting FED. R. CIV. P. 26(c)(1)).

A district court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987) ("A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.").

The Court recommends that the District Court grant New Century's Rule 12(c) Motion on the pleadings because Gaudette has alleged no viable claim under Title VII. If the District Court accepts the recommendation, there will be no need for discovery.

The Court finds that a limited stay of discovery is warranted pending the District Court's ruling on New Century's Rule 12(c) Motion to conserve the parties' and the court's resources. *See Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 (5th Cir. 1990) (affirming stay of discovery pending ruling on motion for summary judgment, finding that "[t]he trial court sought to resolve an issue that might preclude the need for the discovery altogether thus saving time and expense"); *Petrus*, 833 F.2d at 583 (affirming stay of discovery where "[n]othing that [plaintiff] could have learned through discovery could have affected the resolution of the defendants' 12(b)(6) motion"). Accordingly, the Court **GRANTS** Defendant's Motion to Stay Discovery (Dkt. 16) pending resolution of the Rule 12(c) Motion.

## V.     Motion to Exclude

New Century also moves to exclude Gaudette's human resources expert, Coneisha Sherrod. Dkt. 17. Because this Magistrate Judge recommends that the District Court grant New Century's Rule 12(c) Motion and dismiss this suit, New Century's Motion to Exclude (Dkt. 17) is **DISMISSED** as **MOOT**.

## VI.     Order and Recommendation

For these reasons, the Court **GRANTS** Defendant's Motion to Stay Discovery (Dkt. 16) pending resolution of Defendant's Rule 12(c) Motion for Judgment on the Pleadings and **DISMISSES** Defendant's Motion to Exclude (Dkt. 17) as **MOOT**.

This Magistrate Judge **RECOMMENDS** that the District Court **GRANT** Defendant's Motion for Judgment on the Pleadings (Dkt. 13) and **DISMISS** Plaintiff's Complaint and **DENY** Plaintiff leave to file an amended complaint.

The Court **FURTHER ORDERS** the Clerk to **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable District Court.

### VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on April 10, 2024.

_____

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE